UNITED STATES DISTRICT COURT
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
SYNKLOUD TECHNOLOGIES, LLC and
SERENDIA, LLC,

                Plaintiffs,

        -against-

CARTESSA AESTHETICS, LLC.,

                Defendant.
-------------------------------------------------------------------X

**MEMORANDUM DECISION AND ORDER**
21-CV-4423 (GRB) (JMW)

**Christopher J. Gray**
Law Offices of Christopher J. Gray, P.C.
360 Lexington Ave 14th Floor
New York, NY 10017
*For Plaintiffs*

**Robert Kiddie , Jr**
Devlin Law Firm
1526 Gilpin Avenue
Wilmington, DE 19806
*For Plaintiffs*

**Richard LaCava**
ArentFox Schiff LLP
1301 Avenue of the Americas
Floor 42
New York, NY 10019
*For Defendant*

**WICKS,** Magistrate Judge:

      Plaintiffs, Synkloud Technologies, LLC and Serendia, LLC, brought this patent infringement action against Defendant Cartessa Aesthetics, LLC, alleging that Cartessa infringed U.S. Patent Nos. 9,320,536, 9,480,836, 10,058,379, 10,869,812, and 9,775,774, related to radio frequency microneedling devices used for medical and aesthetic dermatological treatment for tightening skin.[1] (DE 1; DE 29.) Before the Court is Defendant's application for a stay of the proceedings pending the resolution of *inter*

---

[1] The patents will hereinafter be referred to using the last three digits of the U.S. Patent Number.

1

*partes* review ("IPR") of the five asserted patents by the United States Patent and Trademark Office ("PTO"). (DE 40.) Plaintiffs oppose the motion. (DE 42.) For the reasons set forth in further detail below, Defendant's motion to stay is granted.

## I.   BACKGROUND

Plaintiffs commenced this action on August 6, 2021. (DE 1.) Defendant filed its Answer to the Complaint with counterclaims on October 15, 2021. (DE 20.) The Court held an Initial Conference on November 1, 2021 and issued an initial discovery scheduling order. (DE 27.) Plaintiffs filed an Amended Complaint on November 3, 2021 (DE 29) and Defendant filed its Amended Answer with counterclaims on November 17, 2021 (DE 36). Plaintiffs filed their Answer to the counterclaims on December 8, 2021. (DE 37.) On December 16, 2021, Plaintiffs served their disclosure of asserted claims, asserting infringement of claims 11, 12, 14, 16, and 19 of the '536 patent; claims 1-4, 6-9, and 12 of the '836 patent; claims 11-15 and 18 of the '774 patent; claims 1-4, 6, and 8 of the '379 patent; and claims 12-15, 17, and 18 of the '812 patent ("asserted claims"). (DE 40-2 at Ex. 1-2.) On December 28, 2021, Defendant filed IPR petitions challenging the asserted claims and other claims related to the '536, '774, and '812 patents. (DE 40-1; DE 40-2 at Ex. 2-4.) Plaintiffs' preliminary response to the petition is due on April 19, 2022 and an institution decision is due on July 19, 2022. (DE 40-1 (citing 35 U.S.C. § 314(b)).) Defendant filed additional IPR petitions challenging the asserted claims of the '836 and '379 patents on February 11, 2022 and institution decisions on those petitions are expected in August or September 2022. (DE 43-1 at Ex. 11-14.) Defendant's fully briefed motion to stay was filed on February 17, 2022. (DE 40; DE 42; DE 43.) On March 23, 2022, the Court granted the parties' joint request to extend the discovery deadlines. (DE 46.)

## II.   STANDARD

Under the Leahy-Smith America Invents Act ("AIA"), the *inter partes* review procedure replaced the *inter partes* examination procedure. *See CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13-cv-05669 (NSR), 2014 WL 2854656, at *2 (S.D.N.Y. June 20, 2014). By implementing the AIA, "Congress sought to establish a more efficient and streamlined patent system . . . and limit unnecessary and

2

counterproductive litigation costs and to create a timely, cost-effective alternative to litigation." *Id.* at *2 (internal quotation marks omitted) (citing among others 77 Fed.Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.R.R. §§ 42.100 et seq.)). An IPR petition must be filed within one year of service of the complaint alleging patent infringement. 35 U.S.C. § 3115(b). "The PTO may decide to institute such a review if the petition shows there is a 'reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.'" *Wiesel v. Apple Inc.*, 19-cv-7261, DE 35, (JMA) (SIL) (E.D.N.Y. Nov. 5, 2020) (citing 35 U.S.C. § 314(a)). The decision to institute IPR "must be made within 3 months of the patent holder's response to an IPR petition or 3 months" from the last day the patent holder could respond to the petition, and the "final decision must be made within 1 year of the decision to commence IPR, with the possibility that the proceeding may be extended for an additional 6 months for good cause." *CDX Diagnostics*, at *1-2 (citing 35 U.S.C. §§ 314(b), 316(a)(11)). IPR permits the parties to exchange limited discovery, respond to arguments and attend an oral hearing before a panel of Administrative Patent Judges. *Id.* at *2 (citing 35 U.S.C. §§ 6(a)-(c), 311, 316(a)(10)).

District Courts have inherent power to stay an action pending IPR. *Goodman v. Samsung Elec. Am., Inc.*, 17-cv-5539 (JGK), 2017 WL 5636286, at *2 (S.D.N.Y. Nov. 22, 2017). Courts generally consider three factors in analyzing whether a stay is warranted and appropriate pending the completion of review proceedings before the PTO: "(1) whether a stay will simplify the issues in question and trial of the case; (2) the state of the proceedings; and (3) whether a stay will prejudice the nonmoving party." *CDX Diagnostics,* 2014 WL 2854656, at *2 (internal quotation and citations omitted). In evaluating the prejudice prong, four sub-factors should be taken into account, namely, "(1) the timing of the review request; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633 (DEP), 2014 WL 201965, at *4 (N.D.N.Y. Jan. 15, 2014) (quotation and citation omitted). These factors are not exclusive as courts consider the totality of the circumstances. *Rovi Guides, Inc. v. Comcast Corp.*, 16-CV-9278 (JPO), 2017 WL 4876305, at *3 (S.D.N.Y. Oct. 27, 2017).

### III.     DISCUSSION

**A.  Would a Stay Simplify the Issues in Question and Trial of the Case?  *Yes.***

The issues in patent matters may be simplified through IPR.  *Goodman*, 2017 WL 5636286 at *2. (holding that IPR review resulting in subject patent being declared invalid in part or in full would limit issues "significantly or moot the case entirely").  "[A]ny of the conceivable potential outcomes of IPR will lead to a simplification of the present case" by rending claims moot or narrowing the issues.  *Rovi Guides*, 2017 WL 4876305 at *3.  Even if all claims are upheld, Defendant will be "estopped from challenging the validity of the claims on any ground that was raised or reasonably could have been raised during the IPR proceedings."  *Id.*  (internal quotation marks omitted) (citing 35 U.S.C. § 315(e)(2)).  However, Courts may also take into account whether the PTO has decided to institute IPR proceedings.  *See CDX Diagnostics*, 2014 WL 2854656 at *4 (finding that it was unclear whether PTO would institute proceedings on any or all of defendant's petitions at the time the motion to stay was made, weighing in favor of denying a stay even though potential IPR proceedings may serve to narrow the issues); *Rensselaer Polytechnic Inst.*, 2014 WL 201965 at *7-8 (finding that whether any issues may be simplified through IPR was speculative in light of PTO not yet accepting or denying defendant's petitions and denying motion to stay with leave to renew once PTO makes decision); *Nasdaq, Inc. v. Mia. Int'l Holdings, Inc.*, No. 17-664-BRM-DEA, 2018 WL 3814280, at *3 (D.N.J. Aug. 10, 2018) (finding that issue simplification was entirely hypothetical because PTO had not yet decided whether to institute review of petitions); *see also Novartis Pharma AG v. Regeneron Pharms., Inc.*, --F. Supp. 3d --, 2022 WL 289384, at * 15 (N.D.N.Y. Jan. 31, 2022) ("[T]hough some simplification may result from the PTO's review, this factor only slightly favors [Defendant.]").

Plaintiffs argue that the purported benefits of a stay are lost if the PTO institutes review of some, but not all, of the asserted patents, and that estoppel could complicate matters further.  Plaintiffs claim that because IPR proceedings are limited to "patents and printed publications" (DE 42, citing 35 U.S.C. § 312), Defendant cannot make arguments about prior art before the PTO.  According to Plaintiffs, this will result in Defendant later arguing in this litigation that it should not be estopped from asserting those arguments, which defeats the streamlining or simplification of the litigation in any meaningful way.  (DE 42.)

4

Defendant argues that even if there are invalidity defenses that cannot be resolved in the IPR process, IPR can still simplify issues. (DE 43.) Defendant further argues that even if some validity claims remain after IPR, the potential for simplification is great because Defendant challenged every asserted claim.

The timing of the PTO's decision on whether to institute proceedings is considered in further detail, more appropriately under the undue prejudice factor's sub-prong – status of the review of proceedings. Thus, the Court finds that this factor, as focused on whether the IPR process will simplify the issues before the Court, weighs in favor of a stay as Defendant has filed petitions on all five of the asserted claims in this action. If instituted, the IPR proceedings are conducted before a panel of "persons of competent legal knowledge and scientific ability," which supports the AIA's purpose to streamline litigation. *See CDX Diagnostics* at *2 (citing 35 U.S.C. §§6(a)-(c), 311).

    **B. Does the Case Status Warrant a Stay?** *Yes.*

In analyzing the case status factor, Courts look at the stage of the litigation, based on the date the stay motion is filed. *VirtualAgility Inc., v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014). "The earlier the stage of the proceedings, the greater the reason to grant a stay." *Surfcast, Inc. v. Microsoft Corp.*, No. 2:12-cv-333-JDL., 2014 WL 6388489, at *2 (D. Me. Nov. 14, 2014). Here, the parties' initial scheduling order was modified and discovery deadlines were extended. (DE 46.) Thus, minimal discovery has taken place, no depositions have been noticed, and the *Markman* process is months away. (DE 40-1.) Plaintiffs concede that this case is in its early stages and that Defendant filed its IPR petitions within the statutory period. (DE 42.) This factor therefore weighs in favor of a stay. *See DivX, LLC v. Hulu, LLC*, CV 21-1615 PSG (DFMx), 2021 WL 6499935, at *5 (C.D. Cal. Oct. 6, 2021) (holding that case status weighed in favor of stay when trial was over a year away, discovery had just begun and parties had not filed claim construction briefs); *Wiesel v. Apple, Inc.*, DE 35, 19-cv-7261 (JMA) (SIL) (E.D.N.Y. Nov. 5, 2020) (finding that case status factor weighed in favor of stay because

case was in early discovery as fact discovery was not complete, expert discovery was not complete, and depositions had yet to be held); *Think Prods., Inc., v. ACCO Brands Corp.*, DE 31, CV 14-6659 (KAM) (SIL) (E.D.N.Y. June 19, 2015) (same).

### C. Will Undue Prejudice Ensue from the Issuance of a Stay? *No.*

"[M]ere delay in the litigation does not establish undue prejudice." *Rensselaer Polytechnic Inst.*, 2014 WL 201965, at *4 (citation omitted). Here, the four sub-factors that the courts weigh in determining whether a party will suffer undue prejudice or be at a clear tactical disadvantage, cut in favor of granting the stay.

### i. Timing of the Request and Timing of Request for a Stay

Defendant argues that it expeditiously prepared and filed the three IPR petitions within the statutory one-year period and moved for a stay pending IPR shortly after filing those petitions, and shortly before filing its other two petitions. (DE 40-1.) Defendant further argues that the motion to stay was filed early on in discovery before invalidity contentions are due, and prior to the deadlines for depositions, *Markman* proceedings, and expert discovery. (*Id.*) The Complaint was filed on August 6, 2021 (DE 1) and Defendant filed the first petition on December 28, 2021 (DE 40-1; DE 40-2 at Ex. 2-4) within the one-year statutory period. Defendant also represented that they intended to file the additional petitions within the same month that the subject motion to stay was filed and did so. (DE 40; DE 43-1 at Ex. 11-14.) Plaintiffs do not dispute that Defendant filed its IPR petitions within the statutory period and ultimately concedes that this sub-factor does not weigh against a stay. (DE 42.) The Court agrees and finds that the timing of Defendant's IPR request and Defendant's request for a stay favor granting the stay. *See CDX Diagnostics*, 2014 WL 2854656 at *4 ("There has been nothing to indicate that the timing or actions of Defendants evidences an intention to prejudice Plaintiffs or somehow game the system.") (citation omitted).

6

### ii. Status of the Review Proceeding

Courts across the country are split as to whether filing a motion to stay is premature if a petition is filed with the PTO, but a decision on whether to institute has not yet been rendered.[2] *Nasdaq*, 2018 WL 3814280, at *2-3. And while one court in the Northern District of New York has found that the court cannot determine whether issues in a case will be narrowed until the PTO makes a preliminary decision on an IPR petition, *see Rensselaer Polytechnic Inst.*, 2014 WL 201965 at *5-6, the Eastern District has more recently addressed this factor head on. *See Wiesel v. Apple, Inc.*, DE 35, 19-cv-7261 (JMA) (JMW) (E.D.N.Y. Nov. 5, 2020) and *Think Prods., Inc., v. ACCO Brands Corp.*, DE 31, CV 14-6659 (KAM) (SIL) (E.D.N.Y. June 19, 2015) (both comparing cases which held that a motion to stay is premature when the PTO has not yet acted upon an IPR petition, to cases which granted stays despite uncertainty regarding timing of the PTO's decision whether to institute proceedings because of the high probability such a request would be granted and because potential benefits outweigh a short delay if a stay is granted and the IPR is denied). As the Honorable Steven I. Locke aptly found, "the better course is to allow the PTO to apply its expertise to these proceedings before considerable judicial resources are expended." *Id.* Indeed, the Court finds this reasoning is in line with the AIA's overarching goal of the IPR process – to streamline the patent system and eliminate counterproductive litigation costs. Here, denying a stay based on this factor may lead to duplication of labor-intensive stages of discovery including additional written discovery and/or motions, and a claim construction hearing which is scheduled for three days after the PTO decision on the first set of petitions is due to be issued. (DE 40-1; DE 28.) Accordingly, the Court finds that this subfactor heavily leans toward favoring a stay.

---

[2] In *Nasdaq*, the Court set forth a variation on the standard for analyzing whether a stay was appropriate, and in doing so considered "status of the review proceeding" under the" simplification of issues" prong *and* in a separate section addressing whether a stay was premature. *See id.*

### iii. The Relationship of the Parties

Where the parties are competitors, there is certainly the real possibility of undue prejudice. "[C]ompetition between parties can weigh in favor of finding undue prejudice." *VirtualAgility Inc.*, 759 F.3d at 1318 (citation omitted); *see also Novartis Pharma*, 2022 WL 289384 at *15 (finding that parties in direct competition weighs strongly in favor of finding prejudice); *Rensselaer Polytechnic Inst.*, 2014 WL 201965 at *6 (noting that when parties are direct competitors there is a reasonable chance that a stay will lead to potential loss of market share and "erosion of goodwill" (citations omitted)).

Defendant argues that the parties' relationship does not weigh against a stay, or if it does, only marginally. (DE 40-1.) Specifically, Defendant argues that the RF microneedling market is a multi-competitor market which undermines the risk of undue prejudice from factors such as loss of market value. (*Id.*; 40-2 at Ex. 10.) Plaintiffs assert that they would be at a clear tactical disadvantage if a stay is issued because they are direct competitors with Defendant in the market for radio frequency microneedling devices. (DE 42; DE 29 at ¶¶ 16-17.)

Where the parties are competitors in a small pool of competitors, there exists a greater likelihood of prejudice. But when that pool of competitors is large, that risk is minimized. Indeed, some courts have found that being in a multi-competitor market reduces the risk of loss of market value. *See Masimo Corp. v. Sotera Wireless*, No. 19-cv-01100-BAS-NLS, 2021 WL 321481, at *5 (S.D. Cal. Feb. 1, 2021) (finding that defendant being one of at least eleven competitors in the market undermined plaintiff's assertion of undue prejudice because of loss of market value); *Putco, Inc. v. Carjamz Com Inc.*, No. 20-cv-50109, 2021 WL 4926499, at *3 (N.D. Ill. Mar. 2, 2021) (considering defendant's argument that other competitors had similar market share, and defendant itself had less than 2 percent of entire market share); *Inogen, Inc. v. Inova Labs, Inc.*, No. SACV 11-1692-JST (ANx)., 2012 WL 4748803, at *3 (S.D. Cal. Mar. 20, 2012) (finding that evidence of at least ten other participants in subject market diluted the direct effect of defendant's sales on plaintiff's market share). This Court agrees. Moreover, a stay does not diminish the monetary damages that Plaintiffs may recover in this lawsuit, "it only delays realization of those damages."

8

*VirtualAgility Inc.*, 759 F.3d at 1318.

Under this sub-factor, Defendants also argue that Plaintiffs cannot show that a delay would cause undue prejudice because of an alleged competitive relationship with Defendant. (DE 40-1.) Specifically, Defendant asserts that the parties' relationship weighs in favor of granting a stay because Plaintiffs did not act expeditiously – Plaintiffs waited over 3-1/2 years to sue Defendant after sending a letter to Defendant in February of 2018 regarding their patent claims. (DE 40-1.) Plaintiff claims that it has rational reasons for not seeking a preliminary injunction and not filing suit earlier against Defendant – Plaintiff is a small company with limited resources, and a related patent was being challenged in Korea by the manufacturer of the products Plaintiff is now accusing of infringement. (DE 42.)

Whether Plaintiffs would be unduly prejudiced by a stay, centers on the "need for an expeditious resolution of [the] claim." *VirtualAgility Inc.*, 759 F.3d at 1318. Plaintiffs' proffered rationale for not filing suit earlier and not moving for injunctive relief is not persuasive. Plaintiffs recount the history of the patent challenge issues they dealt with in Korea, and blame their delay in filing the subject action on fear that they would need to expend significant time and resources also dealing with resultant patent challenges. Plaintiffs offer no support as to how waiting 3-1/2 years lessened any chance of challenges being filed once the lawsuit was commenced. (DE 42.) Plaintiffs' delay cuts against their claim that they would be unduly prejudiced by a stay. *Id.* at 1319-20 (finding that while there may be "rational reasons for not pursuing a preliminary injunction. . . the fact that it was not worth the expense to ask for this remedy contradicts [plaintiff's] assertion that it needs injunctive relief as soon as possible" and thus, "patentee's delays in pursuing suit and seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay").

Accordingly, the Court finds that the parties' relationship, even though as competitors, is insufficient on its own to deny the issuance of a stay.

Overall, the Court finds that the four undue prejudice subfactors weigh in favor of granting a stay.

9

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the relevant factors weigh in favor of issuing a stay.  Accordingly, Defendant's motion for a stay pending the resolution of the *inter partes* review of the five asserted patents is therefore granted.

Dated:  Central Islip, New York
          April 6, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*
      JAMES M. WICKS
   United States Magistrate Judge